Hon. Timothy W. Dore
Chapter 11
Location: Seattle – Courtroom 8106
Hearing Date: August 22, 2025
Hearing Time: 9:30 a.m.
Response Date: Time of Hearing
(Order shortening time pending)

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

CAR TOYS, INC.,

Debtor.

CASE NO. 25-12288-TWD

**STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING**

Car Toys, Inc. (the "**Debtor**," the "**Company**," or "**Car Toys**"), the above captioned debtor-in-possession, moves the Court pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 4001-3, and 9013-1(d)(2)(E) of the Local Rules of Bankruptcy Procedure for the Western District of Washington (the "**Local Bankruptcy Rules**"), for the entry of an interim Order (1) authorizing the Debtor's use of cash collateral in which the Senior Secured Lender (defined herein) asserts a security interest; (2) authorizing the Debtor to grant adequate protection in favor of the Senior

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 1

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 1 of 17

Secured Lender on account of the Debtor's use of cash collateral; (3) approving a post-petition loan facility; and (4) setting a final hearing. This motion is based upon the files and records herein, the accompanying Declarations of Phillip Kaestle ("**Kaestle Declaration**") and Daniel Brettler ("**Brettler Declaration**") in support of the First Day Motions, the exhibits thereto, and the consent of the Senior Secured Lender.

## JURISDICTION

1. The United States Bankruptcy Court for the Western District of Washington (this "Court") has jurisdiction over these chapter 11 cases, the Debtor, property of the Debtor's estate and this matter under 28 U.S.C. § § 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of this chapter 11 case in this district is proper under 28 U.S.C. § § 1408 and 1409.

3. The statutory bases for the relief requested in this Motion are sections 105(a), 361, 362, 363, 364, 503 and 507 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6002, 6004, and 9014 (the "Bankruptcy Rules") and Rules 4001-3, and 9013-1(d)(2)(E) of the Local Rules of Bankruptcy Procedure for the Western District of Washington (the "Local Bankruptcy Rules").

## BACKGROUND

4. On August 18, 2025 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in this chapter 11 case.

6. Additional factual background regarding the Debtor, including its business operations, capital structure, and the events leading to the filing of this chapter 11 case is set forth

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

4922-2099-1326, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 2 of 17

in detail in the First Day Declarations of Philip Kaestle and Daniel Brettler, which are fully incorporated into this Motion by reference.

**A. The Pre-Petition Secured Loan and Efforts to Obtain Financing**

Beginning in May of 2023, the Debtor has covered its ongoing net operating losses through secured loans from Daniel Brettler evidenced by the Brettler Secured Loan Agreement, the Brettler Security Agreement (the "**Brettler Security Agreement**"), and the Sixth Amended and Restated Promissory Note, together (the "**Brettler Secured Loan**"), and from Webster Bank (the "**Webster Bank Secured Loan**"), on which loan Mr. Brettler ("**Senior Secured Lender**," or "**DIP Lender,**" or "**Brettler**") was comaker. Brettler Decl. at ¶ 16. Both loans were each secured by substantially all of the company's personal property assets. The Brettler Secured Loan has had several amendments which have resulted in a current indebtedness of $15,613,131.97. *See* Brettler Decl. at ¶_17.

A UCC-1 filed with the Washington Department of Licensing was filed on May 2, 2023, under File Number 2023-122-4223-3 in favor of Daniel E. Brettler. *Id.* at ¶ 18. A UCC-1 filed with the Washington Department of Licensing was filed on November 18, 2024, under File Number 2024-323-3319-4 in favor of Webster Bank. *Id.* Just prior to the filing of this case, Webster Bank called Mr. Brettler's obligation on the Webster Bank Secured Loan and Mr. Brettler paid this loan full, pursuant to a payoff received on August 14, 2025 in the amount of $5,028,714. *Id*. at ¶ 19. Mr. Brettler thereby acquired Webster Bank's secured claim in this case through subrogation and assignment of the Webster Bank Secured Loan. *See* Brettler Decl. at ¶ 19.

On August 15, 2025, a UCC-3 Termination statement was filed for Webster Bank at File Number 2025-227-6738-0. *Id.* at ¶ 21. The payoff to Webster left Mr. Brettler as the only secured lender with a blanket lien on the assets of the company. *Id.* This has left the Senior Secured Lender with a current total loan balance of $20,641,845.60. *Id.* In November of 2024, a portion of the Webster Bank loan was used to pay down the then existing balance of the Brettler Secured Loan.

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 3

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

4922-2099-1326, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 3 of 17

Since that time, on August 14, 2025, Brettler paid the Webster Bank loan in full from his personal funds thus granting him a new value defense. *Id.* at ¶ 19.

Given the Debtor's continuing financial challenges, in March of 2025 the Company embarked on a focused marketing effort to identify a buyer or investment partner. Brettler Decl. at ¶ 22. With SCP's assistance, the Debtor prepared an investor presentation and other marketing materials to use for the sale process. SCP assisted with the completion of the 2025 projected income statement budget, an add-back schedule to itemize historical non-recurring expenses, and a robust 4-wall analysis to analyze store-level profitability. *Id.* SCP opened a data room through Datasite to professionalize and streamline information sharing and developed a comprehensive sales analysis, purchasing history, inventory trend analysis and lease schedules, as well as organized historical financial statements, tax returns, marketing and advertising details, organizational charts, personnel information, real property leases, key contracts, intellectual property and other likely items for due diligence requests. *Id.*

SCP and Brettler contacted various investment bankers, seeking their interest in brokering investment in, or acquisition of, the company, including BMO Capital Markets, Chinook Capital Advisors, Stout, Hilco and Armory Securities. SCP and company counsel also facilitated introductions to Alexander Hutton and First Hill. SCP spoke with several other prospective groups (Lincoln International and Intrepid both passed before taking interviews with CT). *Id.* at ¶ 23. In short, those avenues did not prove fruitful. *Id.*

For that reason, given Brettler's familiarity with the strategic buyer landscape and his long-standing relationships with leaders of those organizations, the Company decided to move forward without the support of an investment banker, instead relying on SCP and the management team to support a sale process. *Id.* at ¶ 24. In total, the Company contacted at least 42 potential strategic buyers, 18 of which signed non-disclosure agreements and have accessed the data room with company financial and operational due diligence information. *Id.* Originally, the Company required offers to be submitted by no later than April 25, 2025, but the Company extended this

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 4

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

4922-2099-1328, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 4 of 17

deadline multiple times to allow various parties to conduct due diligence and further advance negotiations with interested parties. Brettler Decl. at ¶ 24. Those parties declining to pursue a transaction cited various factors, including: Declining trajectory of anticipated sales across the industry, Individual factors, such as risk tolerance, financial wherewithal, succession planning, Company-specific factors, including alternative business models, operational differences, strategic vision, and Macroeconomic uncertainly regarding tariffs and the general state of the industry and economy. *Id.*

All of the Debtor's stores, its distribution center, and its Oregon annex have been the subject of the company's and SCP's diligent marketing efforts. *Id.* at ¶ 26. These efforts have culminated in the company negotiating the five purchase and sale agreements (the "**PSAs**"), pursuant to which the company aims to sell a total of 35 stores (the "**Purchased Stores**") in 4 states to 5 purchasers (the "**Purchasers**" and each a "**Purchaser**") for a combined purchase price of $13,944,852 the "**Combined Purchase Price**"). *Id*. The Combined Purchase Price is subject to adjustments based upon inventory levels at the stores as of the closing dates of these transactions. *Id*. Each of the PSA's is the product of extensive, arm's length negotiations between the company and each of these purchasers. *Id.*

On or about June 25, 2025, the Debtor appointed Philip Kaestle as its chief restructuring officer ("**CRO**"). *See* Kaestle Decl. at ¶ 25.

**B. Use of Cash Collateral and Adequate Protection**

The Debtor requires, and the Senior Secured Lender have consented to, the immediate use of the cash proceeds of the Prepetition Credit Agreement Collateral (the "Cash Collateral") to continue uninterrupted operations for the benefit of the Debtor's creditors and its estate, thereby avoiding immediate and irreparable harm to its business pending a final hearing pursuant to Bankruptcy Rule 4001(b)(2). Kaestle Decl. at ¶ 40. The Debtor is unable to obtain unsecured credit to fund its continued operations. *Id*. at ¶ 41, Brettler Decl. at ¶ 36. The Debtor seeks to use Cash Collateral in accordance with the budget attached as Exhibit B to the Kaestle Declaration (the

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 5

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

4922-2099-1326, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 5 of 17

"**Budget**"). *See* Kaestle Decl. at ¶ 37, Ex. B. Without the use of Cash Collateral, the Debtor will be unable to pay its ongoing operating expenses, including payroll, and will thus be unable to continue ongoing business operations. Kaestle Decl. at ¶ 41, Brettler Decl. at ¶¶ 37- 38. The Debtor also requests, and Brettler consents, to use cash collateral to fund the movement of inventory from the stores that are being closed to the remaining stores that will be sold. Such actions are necessary to avoid immediate and irreparable harm to the debtor as it is necessary to maintain inventory level and health of the store through closing to maintain going concern values. Brettler Decl. at ¶ 38. The PSAs require Debtor to maintain a sufficient level of inventory. Further, the Budget provides for, and Brettler consents to, the use of Cash Collateral to fund the WARN Act Adversary settlement, if approved by this Court in the amount of $125,000, as discussed in the Brettler Declaration and in the Motion to Approve the WARN Act Settlement. Brettler Decl. at ¶ 39, Kaestle Decl. at ¶ 41. The terms of the Debtor's use of the Cash Collateral are as follows:

    a.    **Adequate Protection Lien.** Pursuant to §§ 361 and 363 of the Bankruptcy Code, the Debtor proposes to provide adequate protection of the interests of the Senior Secured Lender, by granting the Senior Secured Lender (the "**Adequate Protection Liens**") in (a) assets of the same kind, type, and nature as the Pre-Petition Collateral in which the Senior Secured Lender and the IRS held liens as of the Petition Date and which are acquired after the Petition Date (the "**Post-Petition Secured Loan Collateral**"); and (b) all proceeds of the Post-petition Collateral, to secure the amount of any diminution in the Senior Secured Lender's interests in the subject Prepetition Collateral as a result of the Debtor's Senior Secured Lender's interests in the subject Prepetition Collateral as a result of the Debtor's use of Cash Collateral. The respective liens of the Senior Secured Creditor in the Post-Petition Collateral have the same priority with respect to the Post-Petition collateral as they had in the Pre-Petition Collateral on the date of filing.

    b.    **Payment of Interest.** No monthly interest payment to the Senior Secured Lender is required. Payment on the Pre-Petition Secured Loan is due upon demand as described in

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 6

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700 fax 206 587 2308

4922-2099-1326, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 6 of 17

the Note. There is no proposed Adequate Protection Payment.

  **c.**  **Reporting.** The Debtor shall provide the Senior Secured Lender with financial and other reporting in compliance with the Proposed Order submitted herewith and the requirements of the Bankruptcy Code and Rules. Timely monthly operating reports during the cash collateral period will satisfy this condition.

  **d.**  **Insurance.** The Debtor shall continue to maintain insurance on its assets as the same existed as of the Petition Date.

  **e.**  **Superpriority Administrative Expense Claim.** Under § 507(b) of the Bankruptcy Code, all obligations subject to the Adequate Protection Lien have priority in payment over all other administrative expenses of the estate other than the Professional Fund and Carve out (as defined herein).

Brettler Decl. at ¶ 39, Kaestle Decl. at ¶ 41.

  **C. Proposed Post Petition Financing**

  In addition to the use of Cash Collateral, the Debtor will need to borrow funds on a post-petition basis in order to meet the projected expenditures as set forth in the Budget. Kaestle Decl. ¶ 42, Brettler Decl. ¶ 40. Prior to the Petition Date, the Debtor successfully negotiated post-petition financing evidenced by the DIP loan note (the "**DIP Loan**") upon the terms and conditions set forth in the Credit Agreement attached as Exhibit I to the Brettler Declaration (the "**Credit Agreement**") to the Brettler DIP ("**DIP Lender**") agreed to make and provide the DIP Loan upon the terms and conditions set forth in the Credit Agreement (collectively, "**DIP Loan Documents**"). *See* Credit Agreement, Recitals. Brettler Decl. at ¶ 41, Exhibit I.

  In accordance with the disclosure requirements of Bankruptcy Rule 4001(c) and Local Rule 4001-3 and Appendix A to the Local Bankruptcy Rules, a summary of the material terms of the DIP Loan and Interim DIP Order, including a description of each of the provisions required to be

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 7

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

4922-2099-1326, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 7 of 17

highlighted by such rules, are set forth in the chart below.[1]

| | |
|---|---|
| **Borrower**<br>Bankruptcy Rule 4001(c)(1)(B) | Car Toys, Inc.<br>*See* Credit Agreement, Recitals |
| **Lender**<br>Bankruptcy Rule 4001(c)(1)(B) | Daniel Brettler<br>*See* Credit Agreement, Recitals |
| **DIP Agent**<br>Bankruptcy Rule 4001(c)(1)(B) | N/A |
| **Commitment and Availability**<br><br>Bankruptcy Rule 4001(c)(1)(B) | The DIP Loan shall be a secured term loan credit facility of up to $500,000 for which Lender will receive protection under Sections 364(c)(1), (2) and (3) and 364(d)(1) of the Bankruptcy Code. $500,000 (based on a final hearing date prior to September 1, 2025), will be available upon (i) entry of the Interim DIP Order and (ii) execution and delivery of documents acceptable to Lender including but not limited to (a) the Budget and (b) The balance (will be available upon entry of the Final DIP Order, with all remaining funds to be available in accordance with the Budget (defined below). The DIP Loan is being provided to fund the Debtor's operation as reflected and consistent with a budget (the "Budget") approved by Lender. Three (3) business days prior notice must be given for each request for advance.<br><br>*See* Credit Agreement, Section 2.01 |
| **Maturity Date**<br><br>Bankruptcy Rule 4001(c)(1)(B) | The Maturity Date is August 31, 2026;<br><br>Availability of DIP Loan shall terminate immediately and prior to the Maturity Date |

---

[1] Capitalized terms used in this summary but not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Loan Documents. This statement is qualified in its entirety by reference to the applicable provisions of the DIP Loan Documents, including the Interim DIP Order. To the extent there is any inconsistency between this concise statement and the provisions of the DIP Loan Documents, the provisions of the DIP Loan Documents shall control. To the extent there is any inconsistency between this concise statement and the provisions of the DIP Loan Documents, and the Interim DIP Order, the provisions of the Interim DIP Order shall control.

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 8

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 8 of 17
4922-2099-1328, v. 2

| | |
|---|---|
| | upon the occurrence of a "Termination Event," which is the earliest to occur of: (a) 30 days after the entry of the Interim DIP Order (unless a Final DIP Order approved by the Lender has been entered as of such date), (b) the entry of a court order on not less than five (5) court days following the provision of written notice to the Debtor (with a copy of such notice provided to counsel for the Debtor, the Creditor's Committee and the U.S. Trustee) upon the occurrence of an Event of Default (as defined in DIP Loan Agreement, or (c) the date on which neither the Interim Order nor the Final Order is in full force and effect.<br><br>*See* Credit Agreement, Definitions |
| **Interest Rate, Payments, Fees and Expenses**<br><br>Bankruptcy Rule 4001(c)(1)(B) | Interest Rate: SOFR plus .75, 5.09% as of 8/15/2025<br><br>Default Rate: In the event of (i) a default by the Debtor in (a) its payments to Lender or (b) its performance of its obligations under DIP Loan, the Interim DIP Order or the Final DIP Order, or (ii) the occurrence of an Event of Default as described in the DIP Loan, additional interest of 5% will be added to the regular interest rate.<br><br>Payments: No monthly payments.<br><br>*See* DIP Loan, Section 4 (a). |
| **Collateral and Lien Priority**<br><br>Bankruptcy Rule 4001(c)(1)(B) | The DIP Loan shall be secured by lien and security interest in and against all of the Debtor's personal property, general intangibles, equipment, receivables, inventory, goodwill, intellectual property, licenses and the like (together with the Property, the "DIP Collateral"). The lien securing the DIP Loan shall be subordinate the Pre-Petition Secured Loan.<br><br>Any cash collateral arising from the Property shall constitute part of the Collateral and "Cash Collateral" as such term is used in the |

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 9

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

4922-2099-1328, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 9 of 17

| | |
|---|---|
| | Bankruptcy Code.

No secondary financing or liens will be permitted on the Collateral.

*See* DIP Loan, Section 6 and Amendment to Brettler Security Agreement Section II. |
| **Superpriority Administrative Expense Claims**

Bankruptcy Rule 4001(c)(1)(B) | The obligations of the Debtor pursuant to the DIP Loan (the "DIP Loan Obligations") shall be authorized and approved by the Bankruptcy Court, pursuant to section 364(c)(1) of the Bankruptcy Code, as constituting claims with a priority over all administrative expenses of the kind specified in sections 503(b) or 507(b) of Bankruptcy Code (subject only to the Carve-Out (as discussed below).

*See* Interim Cash Collateral/DIP Order, section 8 |
| **Use of Proceeds. Payment of Existing Loan**

Bankruptcy Rule 4001(c)(1)(B) | The proceeds of the DIP Loan will be used finance Debtor's operations and pay employee wages and professionals.

*See* Credit Agreement, 3.12 |
| **Reporting Requirements**

Bankruptcy Rule 4001(c)(1)(B) | No less than monthly, budgets and all reports and disclosures to be delivered to Noteholder under the Cash Collateral Order shall be delivered to Lender.

*See* Interim Cash Collateral/DIP Order, Section 5 (a). |
| **Events of Default**

Bankruptcy Rule 4001(c)(1)(B) | The following are "Events of Default" under the DIP Agreement:

1. The failure by the Debtor to perform or comply with any term of the DIP Agreement **or** any interim or final orders entered by the Bankruptcy Court approving the DIP Loan.
2. The cessation of this DIP Loan to be in full force and effect or the DIP Loan being declared by the Court to be null |

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 10

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

4922-2099-1328, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 10 of 17

and void, or the validity or enforceability of the DIP Loan being contested by the Debtor or the Debtor denying in writing that it has any further liability or obligation under the DIP Loan prior to the full repayment thereof, the Lender ceasing to have the benefit of the liens granted by any Interim DIP Order or Final DIP Order or the entry of an order avoiding or requiring repayment of any amounts paid to Lender.

3. Any application by the Debtor seeking an order of the Bankruptcy Court granting to any party other than Lender a lien or security interest in or against assets that constitute Post-petition Collateral that is senior or equal to the liens and security interests granted to Lender pursuant hereto.

4. The entry of an order in the Bankruptcy Case granting relief from the automatic stay so as to allow a third party or third parties to proceed against any material (in the Lender's reasonable discretion) property, including the Post-Petition Collateral pledged pursuant to the DIP Loan, of the Debtor or to commence or continue any prepetition litigation against the Debtor involving potential liability not covered by insurance, in excess of $50,000 in the aggregate.

5. Entry of a final judgment, decree or order against the Debtor for the payment of money in an amount in excess of $250,000, and such judgment, decree or order shall continue undischarged and unstayed (including pursuant to section 362 of the Bankruptcy Code) for a period of 60 days

6. Any Interim DIP Order or Final DIP Order entered in this case being amended or modified without the consent of the Lender.

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 11

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 11 of 17
4922-2099-1328, v. 2

| | | |
|---|---|---|
| | | 7. Dismissal or conversion of the Bankruptcy Case.<br><br>*See* DIP Loan, section 3, and Interim Cash Collateral/DIP Loan Order, section 8(a)(1). |
| **506(c) Waiver**<br><br>Bankruptcy Rule 4001(c)(1)(B)(x)<br><br>LBR Appendix A, section A. 5 | | **Subject to the entry of the Final DIP Order (but not as part of any Interim Order), no costs or expenses of administration of the Bankruptcy Case or any future proceeding that may result therefrom, including liquidation in chapter 7 or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Post-Petition Collateral or Cash Collateral pursuant to Bankruptcy Code sections 506(c), 552(b) or 105(a) or any similar principle of law without the prior written consent of the Lender.**<br><br>*See* Credit Agreement, section 2.09 |
| **Relief from Automatic Stay**<br><br>Bankruptcy Rule 4001(c)(1)(B)(x)<br><br>LBR Appendix A, Section A. 8 | | The automatic stay of the ability of the Lender to enforce its rights under this DIP Loan, the Interim DIP Order and the Final DIP Order, and of the ability of the Lender to enforce its rights against the DIP Collateral, shall be subject to notice and hearing before the Bankruptcy Court on not less than five (5) court days- notice to counsel for the Debtor, the Creditor's Committee and the U.S. Trustee) following the occurrence of an Event of Default).<br><br>*See* Credit Agreement, section 3.10 (f), and Interim Cash Collateral/DIP Order at 8(a)(1) |

### D. Professional Fund

The Budget provides for a fund ("**Professional Fund**") to pay the post-petition, allowed fees/costs of all professionals retained in this Chapter 11 case, whether by the Debtor or an unsecured creditors committee ("**Committee**"), assuming that one will be formed. Kaestle Decl. a ¶ 44. The purpose of the Professional Fund is to assure that all estate professionals are treated

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 12

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 12 of 17

4922-2099-1328, v. 2

identically. *Id.* All amounts provided for in the Budget for the Professional Fund shall be in addition to any prepetition retainers paid by the Debtor to its professionals, and shall be deposited into an interest bearing trust account maintained by Cairncross & Hempelmann, the Debtor's general bankruptcy counsel, for pro rata payment of allowed fees and costs to the Debtor's and the Committee's professionals if formed, including any amounts payable pursuant to any other order entered by this Court authorizing interim periodic payment of professional fees, subject to final allowance of such fees and costs. Kaestle Decl. at ¶ 45. To the extent the Professional Fund ultimately exceeds all allowed professional fees and costs of the estate, the remaining balance shall remain subject to the first priority security interests of the Senior Secured Lender and returned to the Debtor for its benefit. *Id.* Debtor seeks to use Cash Collateral and proceeds of the DIP Loan to pay the following costs, fees and expenses (collectively, the "**Carve-Out**"): (a) the unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; and (b) Contributions to the Professional Fund to the extent authorized under the Budget in such amounts and at such times as described in the Budget. Kaestle Decl. at ¶ 45. The Budget shall not require Lender to make advances in excess of the Commitment. Kaestle Decl. Exhibit C.

## LEGAL DISCUSSION

**A. Use of Cash Collateral**

Section 363(c) of the Bankruptcy Code provides:

> (2) The Trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless, (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

The Debtor represents that it has insufficient funds to operate unless it uses Cash Collateral, as it holds no unencumbered funds and does not have sources of unencumbered funds, and that the present circumstances require the Debtor to make use of Cash Collateral in order to maintain its ongoing business for the benefit of its estate and creditors. Id. The Debtor has an immediate need

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 13

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

4922-2099-1328, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 13 of 17

to use Cash Collateral to maintain, preserve and protect its assets and have provided for adequate protection of the Senior Secured Lender's interests in the Cash Collateral, as described above. Additionally, the Senior Secured Lender has consented to the use of its Cash Collateral in accordance with the terms of the Interim Order filed herewith and no other entities have an interest in the Cash Collateral, so the requirements of § 363(c) of the Bankruptcy Code are satisfied. For these reasons, the Debtor respectfully requests the Court authorize the use of Cash Collateral pursuant to the terms of the proposed Interim Order filed herewith.

**B. Adequate Protection**

The purpose of adequate protection under Bankruptcy Code § 363 is to compensate a secured lender solely for the diminution in value of its collateral. *Qmect, Inc. v. Burlingame Capital Partners II, L.P.*, 373 B.R. 682, 689-90 (N.D. Cal. 2007) citing *In re Timbers of Inwood Forest Assocs.,* Ltd., 484 U.S. 365, 377, 108 S. Ct. 626 (1988)). Adequate protection payments are not to be used to compensate the creditor for lost interest or to provide lost opportunity costs. *In re Weinstein*, 227 B.R. 284, 296 (9th Cir. BAP 1998) citing *In re Timbers*. An equity cushion, standing alone, provides adequate protection justifying the restraint of lien enforcement by a bankruptcy court. *In re Mellor*, 734 F.2d 1400, 1401 (9th Cir. 1984). Adequate protection is not meant to be a guarantee that a creditor will be paid in full. Instead, the Court must determine whether the creditor's interests are protected as nearly as possible against the possible risks to that interest. *In re Ernst Home Ctr.*, 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 267 (Bankr.C.D.Cal.1988)).

The Debtor believes that the value of its property does not exceed the balance due on the Pre-Petition Secured Loan and that there is no equity cushion for the Pre-Petition Secured Loan, however, based on the Senior Secured Lender's consent to the terms of the proposed Interim Order, adequate protection is provided in the form of replacement liens. In order to adequately protect the interests of the Senior Secured Lender, the Debtor has agreed to grant the Senior Secured Lender Adequate Protection Liens in Postpetition Collateral of the same type in which its pre-petition lien

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 14

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

4922-2099-1328, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 14 of 17

attached to the Prepetition Collateral, in the same priority and validity as its pre-petition liens, as necessary to secure the diminution in the Senior Secured Lender's interests, if any, as a result of the Debtor's use of Cash Collateral.

The Debtor has an immediate need to use Cash Collateral to maintain, preserve and protect its assets and have provided terms for adequate protection of the Senior Secured Lender's interests in the Cash Collateral, and on that basis the Senior Secured Lender has consented to the use of its Cash Collateral, including for the payment of necessary parties to move inventory to non-closing stores. For these reasons, the Debtor respectfully request the Court authorize the use of Cash Collateral pursuant to the terms of the proposed Interim Order filed herewith.

**C. Postpetition Financing**

Section 364(c) of the Bankruptcy Code provides:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503 (b) (1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt – (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or, 507 (b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien.

Section 364(d)(1) of the Bankruptcy Code provides:

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if— (A) the trustee is unable to obtain such credit otherwise and; (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

The Debtor is unable to procure the required funds in the form of unsecured credit or unsecured debt with an administrative priority. The DIP Loan is in the best interest of the Debtor's estate and creditors because it is the only means at this critical juncture of continuing operations during the Debtor's efforts to liquidate its business as a going concern to maximize value for the

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 15

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

4922-2099-1328, v. 2

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 15 of 17

estate, to the extent the use of Cash Collateral proves inadequate. The circumstances of this case thus require the Debtor to obtain financing under § 364(c).

The terms of the DIP Loan reflect good faith, arm's-length negotiations between the Debtor and the DIP Lender, with input from the Senior Secured Lender and Senior Secured Lender's counsel, as well as the Debtor's exercise of sound business judgment. Accordingly, the Debtor respectfully requests that the Court authorize the Debtor to obtain post-petition financing pursuant to § 364 (c) and (d) of the Bankruptcy Code.

**D. Good Faith**

The proposed terms and conditions of the DIP Loan are fair and reasonable and were negotiated by the parties in good faith and at arm's length. Kaestle Decl., Brettler Decl. Accordingly, the DIP Lender should be accorded the benefits of § 364(e) of the Bankruptcy Code with respect to the DIP Loan.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of an order in the form submitted herewith, authorizing the Debtor's use of Cash Collateral as set forth herein, approving the DIP Loan, and setting a final hearing at such time as the Court may direct.

DATED this 19th day of August, 2025

CAIRNCROSS & HEMPELMANN, P.S.

 /s/ Steven M. Palmer
Steven M. Palmer, WSBA No. 48823
E-mail: spalmer@cairncross.com
Bruce W. Leaverton, WSBA No. 15329
E-mail: bleaverton@cairncross.com
Maria Y. Hodgins, WSBA No. 56924
E-mail: mhodgins@cairncross.com
Ryan R. Cole, WSBA No. 62066
E-mail: rcole@cairncross.com

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 16

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Case 25-12288-TWD    Doc 12    Filed 08/19/25    Ent. 08/19/25 13:45:01    Pg. 16 of 17
4922-2099-1328, v. 2

```
 1        524 Second Avenue, Suite 500
          Seattle, WA 98104-2323
 2        Telephone: (206) 587-0700
          Facsimile: (206) 587-2308
 3        *Attorneys for Debtor*

 4

 5        Wenokur Riordan PLLC

 6

 7         /s/Nathan Riordan
          Nathan Riordan, WSBA No. 33926
 8        E-mail: nate@wrlawgroup.com
          600 Stewart St Ste 1300
 9        Seattle, WA 98101-1255
          Telephone: (206) 903-0401
10        Facsimile: (206) 219-4141
          *Attorneys for Daniel Brettler*
11

12

...

26
```

STIPULATED MOTION TO: (1) AUTHORIZE USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION, (2) APPROVE POST-PETITION LOAN FACILITY, AND (3) SET A FINAL HEARING - 17

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308