Hon. Timothy W. Dore
Chapter 11
Location: Seattle – Courtroom 8106
Hearing Date: August 22, 2025
Hearing Time: 9:30 a.m.
Response Date: Time of Hearing
(Order shortening time pending)

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

CAR TOYS, INC.,

           Debtor.

CASE NO. 25-12288-TWD

**DECLARATION OF DANIEL E. BRETTLER IN SUPPORT OF FIRST DAY MOTIONS**

I, Daniel E. Brettler, declare and state as follows:

1.     I am the founder, chairman and majority shareholder of Car Toys, Inc. ("**Car Toys**," the "**Debtor**," or the "**Company**"), a Washington corporation, and the debtor and debtor in possession in this Chapter 11 case. I am also the company's senior secured lender, its majority shareholder and the owner of Brettler Real Estate, Inc. ("**Brettler REA**"), which is the company's landlord under seven leases of real property. I am over the age of eighteen, I have personal knowledge of the facts set forth in this Declaration, and I am competent to testify.

**BACKGROUND**

2.     Car Toys is a U.S. based specialty retailer of mobile electronics Products and services. Founded on February 4, 1987, the company is headquartered in Seattle, Washington, offering car audio systems, mobile electronics, installation services, window tinting and other

DECLARATION OF DANIEL E. BRETTLER - 1

vehicle upfitting products and services. Over the years, Car Toys has built a strong brand and reputation for its knowledgeable staff and custom installation services.

3.      Prior to my founding of the Company, I had worked in the home and car electronics retail industries and saw an opportunity in the emerging mobile electronics sector. My vision was to create a retail environment that combined high-quality car audio products with expert installation services. Since its founding, the Company has established itself as a national leader in the industry.

4.      During its early years, Car Toys focused heavily on car stereo systems, which were becoming increasingly popular with the rise of aftermarket car audio enhancements. Early on, the Company distinguished itself through excellent customer service and skilled technicians, positioning itself as a high-end alternative to mass merchant electronics retailers.

5.      By the early 1990s, Car Toys began expanding throughout the Pacific Northwest. Its combination of quality products, strong vendor relationships, and in-house installation services enabled steady growth.

6.      After expanding into Oregon and Colorado, Car Toys expanded in the early 2000's into Texas. During this time, the Company also broadened its product offerings to include:

- Bluetooth hands-free devices
- In-car navigation systems
- Satellite radio
- Vehicle security systems

Car Toys also invested in training programs to ensure its staff could provide expert advice and perform complex installations, especially as vehicles became more integrated with electronic systems. By the mid-2000s, Car Toys operated more than 50 stores and had become the largest independent mobile electronics retailer in the United States.

DECLARATION OF DANIEL E. BRETTLER - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Case 25-12288-TWD    Doc 21    Filed 08/19/25    Ent. 08/19/25 14:59:34    Pg. 2 of 16

Docusign Envelope ID: 42C9AFDD-DB17-45FD-BD0F-11146F57A079

## WIRELESS ADVOCATES AND CAR TOYS

7.       In 2004, I founded Wireless Advocates, LLC, a Washington limited liability company ("**Wireless Advocates**"), as a subsidiary of Car Toys. This Seattle-based company specialized in providing wireless products and services through third-party retail partnerships. Until late 2022, Wireless Advocates operated in over 600 retail locations across the United States and Puerto Rico, including Costco Wholesale Corporation, Army & Air Force Exchange Services (AAFES), Marine Corps Exchange (MCX), and Navy Exchange Service Command (NEXCOM).

8.       Beginning on or about June 25, 2013, Wireless Advocates and Car Toys (collectively, the "**companies**") were parties to a Shared Services Agreement ("**SSA**"). Although Car Toys and Wireless Advocates were always operated as discrete businesses with separate product lines, vendors, and customers, the corporate headquarters of both Wireless Advocates and Car Toys were, until March 31, 2023, located in the same physical space, and the two companies shared a common information technology and communications infrastructure, management and administrative staff, and related functions including, finance, human resources, training, insurance, payroll services, a consolidated financial audit, and other related functions. The SSA provided the mechanism for both companies to economize their overhead by sharing and apportioning these expenses.

9.       Initially, Wireless Advocates thrived for many years by integrating private-label wireless kiosks into major retail environments, principally COSTCO stores and U.S. military exchanges. However, in more recent years, Wireless Advocates faced several challenges leading to its eventual closure in December 2022:

- **Supply Chain Issues**: Wireless Advocates experienced significant supply chain disruptions, particularly during the COVID-19 pandemic, which affected product availability and sales.

DECLARATION OF DANIEL E. BRETTLER - 3

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Docusign Envelope ID: 42C9AFDD-DB17-45FD-BD0F-11146F57A079

- **Declining Demand**: The anticipated surge in demand and the upgrade cycle, driven by the rollout of 5G technology did not materialize as expected, impacting sales projections and a much longer upgrade cycle.

- **Loss of Key Partnership**: In 2022, COSTCO notified Wireless Advocates of its termination of its contract, thereby abruptly destroying the operational and financial viability of Wireless Advocates and leading to Wireless Advocates' filing for winding up and liquidation through a general receivership case in King County (Washington) Superior Court.

10. On February 27, 2023, this Court issued its order granting an involuntary petition seeking Chapter 7 relief against Wireless Advocates. *See In re Wireless Advocates*, Case No. 23-10117-TWD, Dkt. No. 91 (the "**Wireless Advocates Chapter 7 Case**"). Thereafter, Virginia Burdette has served as the Chapter 7 Trustee for Wireless Advocates and is the plaintiff in an adversary proceeding against Car Toys, pending as *Burdett v Car Toys*, Adv. Proc. No. 25-01028-TWD (the "**Adversary Proceeding**"). In this Adversary Proceeding, Wireless Advocates' estate and Car Toys each claim they are owed net sums from the other, including amounts owing under the SSA.

11. Also in the Wireless Advocates Chapter 7 Case, Plaintiffs Jason Karroll, Brandon Pham, Armani Little, Bradley Hibbs, Robert Pauley, Joel Gitter, Rusty Clark, Tracey Sava, and the Chapter 7 Trustee filed an adversary proceeding, Case No. 23-10117-TWD (the "**WARN Act Adversary Proceeding**"), alleging various claims against both Wireless Advocates and Car Toys. In order for Wireless Advocates to settle the Plaintiffs' class action claims arising under the federal Worker Adjustment and Retraining Notification ("**WARN**") Act, in which Car Toys was also named, Car Toys agreed to contribute $125,000 to the total settlement amount. A true and correct copy of the Chapter 7 trustee's Motion for Preliminary Approval of Class Action Settlement Resolving WARN Act Adversary Proceeding is attached hereto as **Exhibit A**. Car Toy's $125,000 contribution is due on or around October 6, 2025, subject to the Court's final

DECLARATION OF DANIEL E. BRETTLER - 4

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

approval, which should occur at or shortly after the August 22, 2025, hearing on final settlement approval. Attached hereto as **Exhibit B** is a true and correct copy of the Court's preliminary Order Granting Approval of Class Action Settlement Resolving WARN Act Adversary Proceeding. On the advice of Car Toys' employment counsel, Daniel L. Thieme, for the benefit of the Debtor's estate and the creditors, Car Toys seeks authority to pay this $125,000 settlement amount. Additional information regarding this settlement is included in the Debtor's Motion to Authorize Payment of WARN Act Settlement and the Declaration of Daniel L. Thieme filed therewith.

## CAR TOYS' FINANCIAL CONDITION AND PRE-PETITION EFFORTS TO RESTRUCTURE

12.     As of the date of Car Toys' Chapter 11 petition, the Company owns and operates 47 stores across Washington, Oregon, Colorado, and Texas, as well as a Washington distribution center and an Oregon Upfitting Annex. However, the rapid pace of technological advancement in car audio and infotainment systems has in recent years altered and eroded customer demand for after-market audio sales and installation services. Modern vehicles now typically come with complex, factory-installed infotainment systems that require specialized knowledge and tools to interface with or upgrade. For Car Toys, these developments have required ongoing investment in enhanced online and digital presence, training, certification programs, and diagnostic equipment as well as the diversification of its after-market goods and services, for instance, detailing, window tinting and vehicle upfitting accessories.

13.     Despite pursuing various cost-cutting and revenue enhancement measures, Car Toys' revenues have remained unable to keep pace with its expenses.

14.     The Company's net income was negative $2,687,474 in 2022, negative $6,271,445 in 2023, negative $16,281,715 in 2024, and negative $7,396,075 (year to date). A true and correct copy of the Company's GAAP Income Statement for these periods is attached as **Exhibit C**.

DECLARATION OF DANIEL E. BRETTLER - 5

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Docusign Envelope ID: 42C9AFDD-DB17-45FD-BD0F-11146F57A079

15. On June 28, 2024, Car Toys retained SierraConstellation Partners, LLC ("**SCP**"), a financial advisory firm with expertise in financial restructurings. SCP assisted Car Toys in identifying the foregoing cost reduction and revenue enhancement measures. Thereafter, the Company aggressively pursued cost reduction and revenue enhancement measures, which improved cash flow by nearly $10.0 million on an annualized basis:

- Car Toys implemented $2.0MM of annual cost savings through its store restructuring effort in September of 2024, which resulted in a reduction in force of approximately 140 employees.

- Store-level reorganizations eliminated less productive junior sales and dedicated detailer positions through layoffs and transitions to apprentice installers. Car Toys modified installer compensation to include sales commission and gave them selling responsibility, strengthening the alignment of the commission structure with the customer journey. Inventory control positions were added to help liberate assistant store managers from operational responsibilities so they could remain focused on sales.

- Car Toys executed corporate overhead reductions (~$3.4MM of annual cost savings) in Q4 2024 and Q1 2025.

- Other cost savings initiatives (~$4.3MM of annual cash flow) have included pricing adjustments, the gradual reduction and rationalization of current and non-productive inventory, freezing of most discretionary capital expenditure spending, marketing and consultant expense reductions, and others.

- Car Toys has been very focused on store-level profitability and, as more specifically discussed below, has identified purchasers for its most profitable stores and identified those stores which should be closed and their leases rejected to reduce ongoing losses from its operations.

DECLARATION OF DANIEL E. BRETTLER - 6

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

Docusign Envelope ID: 42C9AFDD-DB17-45FD-BD0F-11146F57A079

1  While the Company projected that its substantial costs savings, coupled with improvement in
2  sales revenues, might return its financial results to break even by April of 2025, as noted above,
3  the profitability of operations unfortunately fell far short of those projections, notwithstanding
4  the Company's improved cash flow.

**CAR TOYS' PRE-PETITION SECURED LOAN AND EFFORTS TO OBTAIN
FINANCING**

16.     Beginning in May of 2023, the Company has covered its ongoing net operating
losses through secured loans from me (the "**Brettler Secured Loan**") and from Webster Bank
(the "**Webster Bank Secured Loan**"), which loan I personally guaranty (the "**Brettler
Guaranty**"). These loans were each secured by substantially all of the Company's personal
property assets. Collectively attached as **Exhibit D** and **Exhibit E** are true and correct copies of
the loan documents relating to the Brettler Secured Loan and the Webster Bank Secured Loan,
respectively.

17.     Both loans were each secured by substantially all of the company's personal
property assets. The Brettler Secured Loan has had several amendments which have resulted in
a current indebtedness of $15,613,131.97.

18.     A UCC-1 filed with the Washington Department of Licensing was filed on
November 18, 2024, under File Number 2024-323-3319-4 in favor of Webster Bank. A true and
correct copy of this UCC-1 is attached hereto as **Exhibit F**.

19.     In November of 2024, a portion of the Webster Bank loan was used to pay down
the then existing balance of the Brettler Secured Loan. Just prior to the filing of this case,
Webster Bank called my obligation on the Webster Bank Secured Loan and I paid this loan full,
pursuant to a payoff received on August 14, 2025 in the amount of $5,029,105.14. I thereby
acquired Webster Bank's secured claim in this case through subrogation and assignment of the
Webster Bank Secured Loan.

DECLARATION OF DANIEL E. BRETTLER - 7

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

20.     On August 15, 2025, a UCC-3 Termination statement was filed for Webster Bank at File Number 2025-227-6738-0. The payoff to Webster left me as the only secured lender with a blanket lien on the assets of Car Toys. A true and correct copy of this UCC-3 Termination statement is attached hereto as **Exhibit G**. This has left me as the "**Senior Secured Lender**" with a current total loan balance of $20,645,081.89.

## CAR TOYS' SALE EFFORTS

21.     Given Car Toys' continuing financial challenges, in March of 2025, the Company embarked on a focused marketing effort to identify a buyer or investment partner. With SCP's assistance, Car Toys prepared an investor presentation and other marketing materials to use for the sale process. SCP assisted with the completion of the 2025 projected income statement budget, an add-back schedule to itemize historical non-recurring expenses, and a robust 4-wall analysis to analyze store-level profitability. SCP opened a data room through Datasite to professionalize and streamline information sharing and developed a comprehensive sales analysis, purchasing history, inventory trend analysis and lease schedules, as well as organized historical financial statements, tax returns, marketing and advertising details, organizational charts, personnel information, real property leases, key contracts, intellectual property and other likely items for due diligence requests.

22.     At the end of 2024 and beginning of 2025, Car Toys and SCP finalized the investor presentation / confidential information memorandum ("**CIM**") and prepared a target list of strategic and financial buyers. SCP and I contacted various investment bankers, seeking their interest in brokering investment in, or acquisition of, the Company, including BMO Capital Markets, Chinook Capital Advisors, Stout, Hilco and Armory Securities. SCP and company counsel also facilitated introductions to Alexander Hutton and First Hill. SCP spoke with several other prospective groups (Lincoln International and Intrepid both passed before taking interviews with CT). In short, those avenues did not prove fruitful.

DECLARATION OF DANIEL E. BRETTLER - 8

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

23.     For that reason, given my familiarity with the strategic buyer landscape and my long-standing relationships with leaders of those organizations, the Company decided to move forward without the support of an investment banker, instead relying on SCP and the management team to support a sale process. Car Toys also solicited informal proposals from the liquidator community to both acquire inventory and conduct liquidations for a fee, then buying or brokering a bulk sale deal.

24.     In total, the Company contacted at least 42 potential strategic buyers, 18 of which signed non-disclosure agreements and have accessed the data room with company financial and operational due diligence information. Originally, the Company required offers to be submitted by no later than April 25, 2025, but the Company extended this deadline multiple times to allow various parties to conduct due diligence and further advance negotiations with interested parties. Those parties declining to pursue a transaction cited various factors, including:

- Declining trajectory of anticipated sales across the industry.
- Individual factors, such as risk tolerance, financial wherewithal, succession planning.
- Company-specific factors, including alternative business models, operational differences, strategic vision.
- Macroeconomic uncertainly regarding tariffs and the general state of the industry and economy.

25.     All of the Company's stores, its distribution center, and its Oregon annex have been the subject of the Company's and SCP's diligent marketing efforts. These efforts have culminated in the Company negotiating five separate purchase and sale agreements (the "**PSAs**") which are nearing completion, pursuant to which the Company aims to sell a total of 35 stores (the "**Purchased Stores**") in four (4) states to five (5) purchasers (the "**Purchasers**" and each a "**Purchaser**") for a combined purchase price of approximately $13.95M (the "**Combined Purchase Price**"). True and correct copies of the nearly completed PSAs are collectively

DECLARATION OF DANIEL E. BRETTLER - 9

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Case 25-12288-TWD     Doc 21     Filed 08/19/25     Ent. 08/19/25 14:59:34     Pg. 9 of 16

attached to the Declaration of Philip Kaestle of SCP, where allowed by the respective non-disclosure agreements, filed concurrently herewith. Additional details regarding the terms of these PSAs are in the same. The Combined Purchase Price is subject to adjustments based upon inventory levels at the stores as of the closing dates of these transactions. Each PSA is the product of extensive, arm's length negotiations between the Company and each of these Purchasers. Each Purchaser holds no interest in Car Toys, and neither I nor any other shareholder of the Company hold any interest in any Purchaser or have been paid or promised any consideration relating to these transactions.

26.     Car Toys settled on a very talented and capable group of Buyers, who will provide hundreds of jobs, customer continuity and extension of the Car Toys brand. As noted above, Brettler REA is the landlord on various leases as described in the accompanying Kaestle Declaration. I have agreed on behalf of Brettler REA to consent to and support assumption and assignment of Brettler REA leased stores by purchasers of these stores and, as noted in the Kaestle Declaration, have agreed to provide reduced rent in order to facilitate Car Toys sales of certain struggling stores.

27.     Sound Distribution is a solid competitor, well regarded in the industry, with stores in Western Washington.  Led by Ed Weber, Foss Car Audio has five locations in Western Washington.  Foss is a premier member of the MESA car audio national buying group.  Foss Car Audio is very similar to Car Toys in its approach to the market as a high end specialty retailer.  In its deal with Car Toys, Ed Weber has provided over $7M of collateral in the form of inventory, company assets and personal Real Estate.  Additionally, Ed is putting $1.1M down at time of close, and will have over $4M of the seller not paid off within the first two years.  The company believes that Ed's business stability and collateral security provides a high level of confidence in completing the financial obligations to seller.

28.     Aspen Sound is a solid competitor in Spokane who will be moving two of their locations into the Car Toys Spokane locations.  With five locations in Spokane, WA, Idaho and

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700  fax 206 587 2308

Docusign Envelope ID: 42C9AFDD-DB17-45FD-BD0F-11146F57A079

Montana, Aspen is well positioned for this acquisition. Aspen intends to terminate its leases in its two existing Spokane locations and move its business into the two Car Toys locations. This provides Aspen with the opportunity to leverage both its existing revenues and employees, with the Car Toys revenues and employees into a similar two locations in Spokane, Washington. This is an all-cash transaction.

29.     Drive In Auto Sound is also a solid competitor in Colorado Springs who will be enhancing their operation with one of Car Toys stores, and likely attract the customers and employees from both. The purchase of the North Springs location and the assets included from the South Springs location, will highly leverage the Car Toys Colorado Springs business and opportunity. This is an all-cash transaction.

30.     Don Longworth and Raul Shakarov are long-term Car Toys field leaders who know the industry and the markets very well. Don has worked for Car Toys, primarily as its VP of Sales for over 16 years. Raul Shakarov has been a Store Manger and Field Leader at Car toys for over 25 years. The field experience is an incredible asset as they have a deep understanding of the people, customers, store operations and merchandising model. They are highly capable in standing up a new business to support the Oregon market and its brand and revenue strengths. Their opportunity to start new and align the cost structure with the Oregon revenues provides a highly profitable business opportunity. They will be providing a $50,000 down payment and securing the seller note with inventory, assets and personal guarantees. They are also providing several hundred thousand dollars of personal working capital for the business.

31.     Troy Parcels and Chris Pritts are also long-term former Car Toys employees with significant experience in field leadership, installation leadership and Human Resource management. Troy worked for Car Toys for over 27 years and Chris Pritts worked for Car Toys for over 14 years. Troys sales, business development and installation leadership, combined with Chris' installation and Human Resource experience, provides them with an exciting and positive opportunity to leverage the Car Toys brand and revenues in the Texas markets. They are highly

DECLARATION OF DANIEL E. BRETTLER - 11

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

capable in standing up a new business to support the Texas markets. They will be providing a $150,000 down payment and securing the Seller note with the business inventory and assets, as well as personal guarantees and individual assets. They will also be contributing several hundred thousand dollars into their start up working capital.

The Texas, Washington/Northern Colorado and Oregon buyers were all unable to get their SBA supported financing due in part to the complexities of a Chapter 11 and the need for Bridge Financing to meet our necessary timelines. All buyers have agreed to give best efforts to re-finance the seller notes in full after two years (an SBA minimum requirement).

32. Based upon my experience and knowledge of the industry, and the results of the Company's diligent marketing efforts, I conclude that each of the prices offered for the Purchased Stores and their related assets constitute good faith, fair market value offered for these assets and are far superior to the liquidation values that would otherwise be recovered on these assets.

33. On or about June 25, 2025, Car Toys appointed Philip Kaestle as its chief restructuring officer ("**CRO**"). Attached as **Exhibit H** is a true and correct copy of the Car Toys board consent resolution appointing Mr. Kaestle as CRO and vesting in him the duty and authority to conduct this Chapter 11 case as the chief fiduciary of the Company.

## CASH COLLATERAL USE AND DIP LOAN

34. Car Toys required, and I have consented to, the immediate use of the cash proceeds of the Pre-Petition Credit Agreement Collateral (the "**Cash Collateral**") to continue uninterrupted operations for the benefit of Car Toys' creditors and the estate.

35. Car Toys has been unable to obtain unsecured credit to fund its continued operations. As such, Car Toys seeks to use Cash Collateral in accordance with the budget prepared by SCP (the "**Budget**"). A copy of this Budget is attached to the Declaration of Philip Kaestle, filed herewith.

DECLARATION OF DANIEL E. BRETTLER - 12

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

Docusign Envelope ID: 42C9AFDD-DB17-45FD-BD0F-11146F57A079

36.     Without the use of Cash Collateral, Car Toys will be unable to pay its ongoing business operating expenses, including payroll.

37.     I consent to Cash Collateral use for the items listed in the Budget, including but not limited to payment to vendors, employees, utilities, landlords, taxing agencies, and all other expenses which arise in the ordinary course of operating the Company, without such use the Company would face immediate and irreparable harm to its value as a going concern.

38.     I also consent to the use of Cash Collateral for the purpose of moving inventory from stores which are closing to stores which are being sold, the purpose of which is to maintain inventory levels to allow the sold stores to continue to function as going concerns. Attached as **Exhibit I** is a true and correct copy of a list of stores that will be closing and where the inventory will be moving.

39.     I consent to Cash Collateral use for the purpose of paying the Car Toys settlement in the Warn Act Adversary Proceeding; the payment would be for the benefit of Car Toys as a going concern. In my opinion, the dollar amount of the settlement is relatively small and Car Toys could easily have to pay more than that to defend the suit and pay any judgment. The terms of the use of such Cash Collateral are as follows:

a.      **Adequate Protection Lien.** Pursuant to §§ 361 and 363 of the Bankruptcy Code, Car Toys proposes to provide adequate protection of the interests of the Senior Secured Lender, by granting the Senior Secured Lender (the "**Adequate Protection Liens**") in (a) assets of the same kind, type, and nature as the Pre-Petition Collateral in which the Senior Secured Lender and the IRS held liens as of the date of the filing of this Chapter 11 (the "**Petition Date**") and which are acquired after the Petition Date (the "**Post-Petition Collateral**"); and (b) all proceeds of the Post-petition Collateral, to secure the amount of any diminution in the Senior Secured Lender's interests in the subject Prepetition Collateral as a result of the Debtor's Senior Secured Lender's and IRS's interests in the subject Prepetition Collateral as a result of the Debtor's use of Cash Collateral. The respective liens

DECLARATION OF DANIEL E. BRETTLER - 13

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Docusign Envelope ID: 42C9AFDD-DB17-45FD-BD0F-11146F57A079

of the Senior Secured Creditor in the Post-Petition Collateral have the same priority with respective to the Post-Petition collateral as they had in the Pre-Petition Collateral on the date of filing.

**b.** **Payment of Interest.** No monthly interest payment to the Senior Secured Lender is required. Payment on the Pre-Petition Secured Loan is due upon demand as described in the Note. There is no proposed Adequate Protection Payment.

**c.** **Reporting.** The Debtor shall provide the Senior Secured Lender with financial and other reporting in compliance with the Proposed Order submitted herewith and the requirements of the Bankruptcy Code and Rules.

**d.** **Insurance.** Car Toys shall continue to maintain insurance on its assets as the same existed as of the Petition Date.

**e.** **Superpriority Administrative Expense Claim.** Under § 507(b) of the Bankruptcy Code, all obligations subject to the Adequate Protection Lien have priority in payment over all other administrative expenses of the estate other than the Professional Fund and Carve out, to the extent that the Adequate Protection Liens are insufficient to compensate the Senior Secured Lender for any diminution in the value of its interests as a result of the Car Toys' use of Cash Collateral.

40. In addition to the use of Cash Collateral, I consent to Car Toys' borrowing funds on a post-petition basis in order to meet the projected expenditures as set forth in the Budget.

41. Prior to the Petition Date, Car Toys successfully negotiated post-petition financing (the "**DIP Loan**") upon the terms and conditions set forth in the Credit Agreement, which is attached to the agreement reached between Car Toys and me (the "**Credit Agreement**"), a true and correct copy of which is attached hereto as **Exhibit J**. A summary of the terms of this Credit Agreement are set forth in the Stipulated Motion to (1) Authorize Use of Cash Collateral and Grant Adequate Protection, (2) Approve Post-Petition Loan Facility, and (3) Set a Final Hearing (the "**Cash Collateral Motion**").

DECLARATION OF DANIEL E. BRETTLER - 14

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Docusign Envelope ID: 42C9AFDD-DB17-45FD-BD0F-11146F57A079

## CONTINUATION OF CUSTOMER PROGRAMS

42.     Car Toys has historically offered its customers certain incentives, and other accommodations to attract and maintain positive customer relationships, the majority of which do not independently entail the expenditure of cash (the "**Customer Programs**"). The Customer Programs include (a) a gift card program, (b) Groupon program; (c) in-store services requiring short-term deposits.

43.     Continuing to honor these obligations for a limited time under certain Customer Programs in the ordinary course of business is necessary for Car Toys to retain its reputation for reliability. It is also necessary to comply with legal obligations, meet competitive market demands, and ensure customer satisfaction.

44.     Retail companies offering gift cards often experience significant "breakage" with respect to redemptions; *i.e*, not all gift cards are ever redeemed, and even when redeemed, balances are often not exhausted. If a gift card is not redeemed within a year of purchase, it is more likely than not to never be redeemed. Based on my experience, historical redemptions at Car Toys are consistent with this general principle. The total face value of unredeemed gift card balances going back five (5) years is $1,145,625. However, this number includes gift cards with minimal balances on them following other large purchases, as well as cards that have remained unredeemed for several years. On gift cards issued within the past year, there remains a balance of approximately $270,832 in unredeemed gift cards, of which I estimate only approximately $70,000 is likely to be redeemed within a 90-day period following sale. It is my expectation that the majority of the remaining gift card balance has no likelihood of redemption.

45.     The same is true with respect to Car Toys' Groupon.com offerings. I estimate that only a fraction of the Groupon redemptions, of the estimated $1,285,546.44 in outstanding Groupon redemptions, are likely to actually occur within a reasonable time period, as I am aware that redemption rates decline if they do not occur within a year, and there are many Groupon

DECLARATION OF DANIEL E. BRETTLER - 15

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

redemptions that have been pending for longer than that. We estimate that no more than $140,000 in redemptions will occur within a 90-day period after stores are sold.

46.     Finally, as of Car Toys' most recent analysis, it is holding approximately $107,223.96 in customer deposits for short-term services. Generally, such deposits are held for a short period while work is performed on customer vehicles or related projects and then applied toward the services. The customer deposits are considered and assumed as part of Car Toys' cash collateral budget in its Cash Collateral Motion, with the assumption that the work paid for by those deposits will be performed in the ordinary course of business.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED this 18th day of August 2025 at Seattle, Washington.

Signed by:

*Dan Brettler*

Daniel E. Brettler

DECLARATION OF DANIEL E. BRETTLER - 16

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308