Hon. Timothy W. Dore
Chapter 11
Location: Seattle – Courtroom 8106
Hearing Date: August 22, 2025
Hearing Time: 9:30 a.m.
Response Date: Time of Hearing
(Order shortening time pending)

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

CAR TOYS, INC.,

            Debtor.

CASE NO. 25-12288-TWD

**DECLARATION OF PHILIP KAESTLE
IN SUPPORT OF FIRST DAY MOTIONS**

I, Philip Kaestle, declare and state as follows:

1. I am the Chief Restructuring Officer (the "**CRO**") of Car Toys, Inc. ("**Car Toys**," the "**Debtor**," or the "**Company**") and a managing director of SierraConstellation Partners, LLC ("**SCP**"). I have personal knowledge of the facts set forth in this declaration, I am over the age of eighteen, and I am competent to testify.

2. This declaration (the "**Kaestle Declaration**") is in support of the First Day Motions filed herewith (collectively, the "**First Day Motions**").

DECLARATION OF PHILIP KAESTLE - 1

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700  fax 206 587 2308

## BACKGROUND AND FINANCIAL CONDITION OF CAR TOYS

3. As is more particularly explained in the accompanying declaration of Car Toys founder and chairman, Daniel Brettler (the "**Brettler Declaration**"), Car Toys has been experiencing financial difficulties for years.

4. The Company's car audio business, which makes up approximately 70% of its revenue, has been declining at the rate of roughly 8 to 10% per year since 2020. In 2021, the Company experienced a strong financial year following pent-up demand coming out of the COVID-19 pandemic. However, this success was short-lived.

5. Car Toys' financial difficulties worsened in 2022 when later in that year its affiliate, Wireless Advocates, LLC ("**Wireless Advocates**"), the seller of wireless phones and network service contracts, lost its exclusive partnership with COSTCO Wholesale Company. This partnership loss proved to be a fatal blow to Wireless Advocates' business, and Wireless Advocates closed its doors in December of 2022. Thus, Car Toys lost the benefit of Wireless Advocates' sharing of management and overhead expenses, all of which now fell on Car Toys alone. As of the date of this declaration, Wireless Advocates remains the debtor in a Chapter 7 case pending before this Court as *In re Wireless Associates, LLC*, Case No. 23-10117-TWD (the "**Wireless Advocates Chapter 7 Case**").

6. Car Toys' financial difficulties have only been exacerbated since 2022. In 2021, the Company generated $127MM of revenue and $4.3MM of Adjusted EBITDA. In 2022, the Company generated $123MM (-3.3% year over year) of revenue and ($0.6MM) of Adjusted EBITDA. In 2023, the Company generated $113MM (-8.3% year of year) of revenue and ($4.5MM) of Adjusted EBITDA.

7. Car Toys' liquidity position necessitated additional cash to fund its working capital. Thus, Dan Brettler began making capital injections as a secured lender to Car Toys in May of 2023. Dan Brettler's principal balance has since grown from $2.0MM on May 4, 2023, to $14.655MM as of August 18, 2025.

DECLARATION OF PHILIP KAESTLE - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

8. Seeking professional help for its growing financial challenges, Car Toys' Board authorized the Company to engage SCP as a financial advisor on June 28, 2024. The engagement effectively began in August of 2024. With SCP's assistance, the Company devised and implemented a number of restructuring initiatives during and immediately following the 2024 holiday season. Although management's cost cutting and other restructuring measures improved cash flow on an annualized basis by nearly $10.0 million, restructuring efforts failed to return the Company to profitability. In the fiscal year 2024, the Company generated ($12.4) million of Adjusted EBITDA.

9. Since September of 2024, Car Toys' management has improved cash flow by nearly $10MM on an annualized basis. Car Toys implemented $2.0MM of annual cost savings through its store restructuring effort in September of 2024, which resulted in a reduction of force of approximately 140 employees.

10. Store reorganization eliminated less productive junior sales and dedicated detailer positions through layoffs and transitions to apprentice installers. Car Toys modified installer compensation to include sales commission and gave them selling responsibility, which strengthened the alignment of the commission structure with the customer journey. Inventory control positions were also added to help liberate assistant store managers from operational responsibilities, so they could remain focused on sales.

11. Car Toys executed corporate overhead reductions of approximately $3.4MM in annual cost savings in Q4 of 2024 and in Q1 of 2025. Other cost savings initiatives, totaling approximately $4.3MM in annual cash flow, included pricing adjustments, the gradual reduction and rationalization of current and non-productive inventory, freezing of all budgeted capital expenditure spending, and marketing and consultant expense reductions.

12. Car Toys has been recently lagging behind industry revenue averages, despite the fact that the Company had consistently outperformed them in the past. The Company's negative sales trend (-14% year over year as of July 31, 2025) has been outpacing negative traffic trend (-

DECLARATION OF PHILIP KAESTLE - 3

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

13% year of year as of July 31, 2025), which suggests that customers are not always finding what they want when they are in Car Toys' retail stores. This may be due in part to a reduced assortment and lower baseline inventory levels.

13. Car Toys invested in original equipment manufacturer ("**OEM**") integration (the process of adding or upgrading aftermarket components in a vehicle), state of the art sound rooms, an auto salon, a new upfitting facility, and increased investment in social and digital media to drive revenue incremental to Car Toys' core car audio business.

14. Despite these efforts, sales did not materialize in Q4 of 2024, which is typically the Company's strongest quarter. Instead, the Company's liquidity issues were exacerbated. A brief improved trend in January of 2025 reversed in February 2025 and has not improved. January 2025 marked the Company's best sales performance in 13 months in terms of year-over-year sales comp, however, January of 2024 was negatively impacted by weather.

15. As of July of 2025, the Company's year-to-date sales of $49.5MM are down by $8.0MM or -14.0% year-over-year and are roughly $11.0MM below plan (at a -18.2% variance). Operational key performance indicators ("**KPI**") have been generally negative, although the Company's commercial sales and upfitting business has remained a bright spot.

16. Car Toys has been aggressively managing cash to extend its runway. Trade vendor and other accounts payable have been stretched, and rent has been paid over the first few weeks of any given month to manage liquidity around month end. Mid-month payroll and sales commission payments have generally led to a cash squeeze on the Company's resources.

17. Car Toys has considered other operational changes to address these financial difficulties. The Company identified candidates for store closures when real property leases were to expire, closed one store in Boulder, Colorado, attempted to sublease its Auburn, Washington distribution center, and considered further reductions to overhead labor and other fixed costs.

18. Dan Brettler continues to support Car Toys with $14.655 million of discretionary capital injections since May of 2023. His debt accrues interest at SOFR + 0.75% ($958K accrued

DECLARATION OF PHILIP KAESTLE - 4

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Docusign Envelope ID: 070DE702-BC50-4EA9-9359-1F68EF814E47

interest as of August 18, 2025) and has not received any cash interest payments since the initial funding. Mr. Brettler's initial interest rate was 8% until he agreed to an interest rate reduction on October 1, 2024.

19. Mr. Brettler's note was increased to $13.25MM on November 12, 2024, including potential letter of credit exposure. To date, actual principal advances under Mr. Brettler's loan to Car Toys have never exceeded $12.5MM.

20. On November 15, 2024, Car Toys closed on a $5.0MM line of credit from Webster Bank, secured by a second lien against Car Toys' assets and a personal guarantee from Dan Brettler. Mr. Brettler paid off the Webster Bank loan in full on August 14, 2025. Webster Bank's loan supported a letter of credit that is required collateral for the existing Car Toys and WA workers' compensation insurance policy. The amount of this line of credit was $342K as of August 14, 2025.

21. The Webster Bank loan was in default. Webster Bank called Mr. Brettler's obligation and he paid the loan in full, pursuant to a payoff received on August 14, 2025, in the amount of $5,029,105.

22. As of July 31, 2025, the Company had approximately $30MM in liabilities. Roughly half of this comes from the Company's obligations to Dan Brettler via his secured loan obligation and the personal guarantee of the Webster Bank line of credit.

23. The Company generated $43.91 million of revenue and ($5.91MM) of Adjusted EBITDA for the year-to-date period ending June 30, 2025.

24. Car Toys' latest cash flow model assumes additional pre-petition funding of $3.3MM during the week ending August 15, 2025, and $0.5MM DIP loan commitment to support the case. The DIP loan is only expected to be drawn against if sale closings drift beyond October 15, 2025.

25. On or about June 25, 2025, the Company appointed Philip Kaestle as its chief restructuring officer ("**CRO**"). Attached as **Exhibit A** is a true and correct copy of the Car Toys

DECLARATION OF PHILIP KAESTLE - 5

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

Case 25-12288-TWD    Doc 22    Filed 08/19/25    Ent. 08/19/25 15:07:49    Pg. 5 of 25

board consent resolution appointing me as CRO and vesting in me the duty and authority to conduct this Chapter 11 case as the chief fiduciary of the Company, as well as a copy of the engagement agreement between Car Toys and SCP.

## CAR TOYS' SALE OF CERTAIN STORES AS GOING CONCERNS

26.     As also described in the Brettler Declaration, given Car Toys' declining sales and its inability to attract investors or financial partners necessary for it to return to profitability, SCP was re-engaged on March 13, 2025, to assist the Company in addressing its financial crisis and help formulate and execute a marketing plan to sell its stores as going concerns to one or more strategic buyers, thereby maximizing recoveries for its creditors. Given Dan Brettler's familiarity with the strategic buyer landscape and his long-standing relationships with leaders of those organizations, the Company decided to move forward without the support of an investment banker, instead relying on SCP and the management team to support a sale process. As part of that effort, we consulted with various asset liquidations firms and prepared a liquidation analysis confirming that a cessation of operations and forced liquidation was likely to generate a substantially smaller recovery on the Company's assets than a successful sale of operating stores to strategic buyers.

27.     In total, the Company contacted at least 42 potential strategic buyers, 18 of which signed non-disclosure agreements, and which accessed a data room with Company financial and operational due diligence information. Originally, the Company required offers to be submitted by no later than April 25, 2025, but the Company extended this deadline multiple times to allow various parties to conduct due diligence and further advance negotiations with interested parties. Those parties declining to pursue a transaction cited various factors, including:

- Declining trajectory of anticipated sales across the industry.
- Individual factors – Risk tolerance, financial wherewithal, succession planning.
- Company-specific factors – Alternative business models, cultural differences, strategic vision.

DECLARATION OF PHILIP KAESTLE - 6

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

- Macroeconomic uncertainly regarding tariffs and general state of the industry and economy.

28.     All of the Company's stores, its distribution center, and its Oregon annex have been the subject of the Company's and SCP's diligent marketing efforts. These efforts have culminated in the Company entering into, and continuing to negotiate, the certain purchase and sale agreements (the "**PSAs**"), pursuant to which the Company aims to sell a total of 35 stores (the "**Purchased Stores**") in 4 states to 5 purchasers (the "**Purchasers**" and each a "**Purchaser**") for a combined purchase price of approximately $13,750,000 (the "**Combined Purchase Price**"), subject to adjustment at closing based on inventory levels at that time, and subject to further negotiations with the Purchasers.

29.     Each of the PSAs is the product of extensive, arm's length negotiations between the Company and each of these purchasers. Each Purchaser holds no interest in the Debtor and neither I nor any other shareholder of the Company hold any interest in any Purchaser or have been paid or promised any consideration relating to these transactions. Based upon my experience and knowledge of the industry, a four-wall analysis, and the results of the Company's diligent marketing efforts, I conclude each of the prices offered for the Purchased Stores and their related assets constitute good faith, fair market value offered for these assets and are far superior to the liquidation values that would otherwise be recovered on these assets.

30.     The terms of these PSAs are generally as follows, but are being further negotiated:

| Purchaser | Purchased Stores | Purchase Price | Relevant Terms |
|---|---|---|---|
| Aspen Sound | DV – Division, Spokane, Washington<br>VA – Valley, Spokane, Washington | $477,536 | • Cash at Closing |
| Drive In Autosound | CO-Colorado Springs North (CN) | $533,809 | • Cash at Closing |
| Sound Distribution dba Foss Audio | AU – Central Aurora, Colorado<br>LT – Littleton, Colorado<br>NG – Northglenn, Colorado<br>GR – Greeley, Colorado | $7,264,807 | • Seller financing<br>• $6,126,807.00 promissory note with |

DECLARATION OF PHILIP KAESTLE - 7

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

Case 25-12288-TWD    Doc 22    Filed 08/19/25    Ent. 08/19/25 15:07:49    Pg. 7 of 25

| Purchaser | Purchased Stores | Purchase Price | Relevant Terms |
|---|---|---|---|
| | PM – Park Meadows, Colorado<br>FC – Fort Collins, Colorado<br>BG – Burlington, Washington<br>BL – Bellevue, Washington<br>EV – Everett, Washington<br>LW – Lynnwood, Washington<br>OL – Olympia, Washington<br>SD – Silverdale, Washington<br>TA – Tacoma, Washington<br>PY – Puyallup, Washington<br>ES – Commercial Annex | | $1,138,000.00 down payment<br>• Secured by substantially all of the Purchaser's assets. |
| [NEWCO] owned by Don Longworth & Raul Shakarov | BV – Beaverton, OR<br>CL – Clackamas, OR<br>GW – Gateway, OR<br>SA – Salem, OR<br>TI – Tigard, OR | $1,522,050 | • Seller financing<br>• $1,466,000 promissory note with $56,050 down payment<br>• Secured by substantially all of the Purchaser's assets and a personal guaranty from Don Longworth and Raul Shakarov. |
| CTX Operating Company | DN – Denton, Texas<br>FR – Frisco, Texas<br>FT – Fort Worth, Texas<br>HU – Hurst, Texas<br>LE – Lewisville, Texas<br>MK – McKinney, Texas<br>RK – Rockwall, Texas<br>AT – Arlington, Texas<br>BA – Baybrook, Texas<br>DE – Humble, Texas<br>WD – Woodlands, Texas<br>WI – Willowbrook, Texas | $3,951,003 | • Seller financing<br>• $3,787,208 promissory note with $163,795 down payment<br>• Secured by substantially all of the Purchaser's assets and a personal guaranty from Chris Pritts and Troy Parcels. |
| | **TOTAL** | **$13,749,205.00** | |

DECLARATION OF PHILIP KAESTLE - 8

CAIRNCROSS & HEMPELMANN, P.S.<br>ATTORNEYS AT LAW<br>524 Second Avenue, Suite 500<br>Seattle, Washington 98104-2323<br>office 206 587 0700   fax 206 587 2308

31.     Once executed, Car Toys will file the PSAs with its Motions under Section 363 of the Bankruptcy Code.

32.     The larger transactions with Sound Distribution, CTX Operating Company, and Don Longworth and Raul Shakarov (or a new entity created by them) will require some form of seller financing from the Company. Purchasers have varying levels of experience working with the lending community and have encountered some challenges.

33.     Car Toys, SCP, Car Toys' counsel, and Dan Brettler's counsel determined that the prompt and successful sales of Car Toys' operating stores through a Chapter 11 process was the best way to maximize recovery to creditors.

34.     The transactions, which will sell Car Toys stores and inventory to these strategic buyers, are clearly the most viable path to recovering maximum value for the Company's assets.

35.     Car Toys explored a variety of transaction structures, including out-of-court private friendly UCC Article 9 foreclosure sales, but ultimately certain lenders of the prospective buyers were unwilling to advance conversations without the consideration of a bankruptcy court-approved sale order.

## CASH COLLATERAL USE AND DIP LOAN

36.     In conjunction with other senior management at Car Toys and with the assistance of other financial advisory professionals at SCP, I have prepared the attached **Exhibit B,** a true and correct copy of which is a detailed cash flow sources and uses pro forma budget for the Debtor's day-to-day operations and its Chapter 11 reorganization efforts through year end 2025 (the "**Budget**"). On behalf of Car Toys, I have also negotiated the terms and conditions for a debtor-in-possession line of credit (the "**DIP Loan**") from Daniel Brettler as lender (the "**DIP Lender**"). Additional details regarding the DIP Loan are included in the Brettler Declaration.

37.     This Budget assumes the Court will hear the Cash Collateral Use and DIP Loan Motions on shortened time and will set a final hearing on these motions (the "**Final Hearing**")

DECLARATION OF PHILIP KAESTLE - 9

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

within 20 days of the Petition Date. Other key assumptions underlying the Debtor's proposed budget in accordance with Bankruptcy Rule 4001(b)(2) for this interim period are limited to those expenditures and advances which are necessary to avoid immediate and irreparable harm to the Debtor's estate.

38.     Car Toys seeks authority to use Cash Collateral in accordance with its Budget and provide adequate protection to its secured lender, Daniel Brettler, as is more particularly set forth in the proposed Stipulated Order Authorizing Cash Collateral Use and Adequate Protection (the "**Cash Collateral Order**"). Car Toys further seeks authority to enter into a debtor-in-possession secured loan facility, as that term is defined in the **DIP Agreement** defined in the Brettler Declaration.

39.     Car Toys requires, and Mr. Brettler (the "**Senior Secured Lender**") has consented to, the immediate use of the cash proceeds of the pre-petition credit agreement collateral ("**Cash Collateral**") to continue uninterrupted operations for the benefit of their creditors and their estates. This will avoid immediate and irreparable harm to the Car Toys business, pending a final hearing before this Court.

40.     Car Toys is unable to obtain unsecured credit from other sources to fund its continued operations. Car Toys therefore seeks to use the Cash Collateral in accordance with the budget described herein. Without the use of such Cash Collateral, Car Toys will be unable to pay its ongoing operating expenses, including payroll, and will be unable to continue its ongoing business operations as a whole.

41.     In addition to the use of Cash Collateral, Car Toys will need to borrow funds on a post-petition basis in order to meet the projected expenditures as set forth in the budget.

42.     Prior to the Petition Date, Car Toys successfully negotiated the DIP Loan upon the terms and conditions set forth in the Credit Agreement attached as **Exhibit C** (the "**DIP Agreement**"). Car Toys is currently in the process of opening a DIP account.

DECLARATION OF PHILIP KAESTLE - 10

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Case 25-12288-TWD   Doc 22   Filed 08/19/25   Ent. 08/19/25 15:07:49   Pg. 10 of 25

## PROFESSIONAL FUND

43.     The Budget provides for a fund ("**Professional Fund**") to pay the post-petition, allowed fees and costs of all professionals retained in this Chapter 11 case, whether by Car Toys or an unsecured creditors committee ("**Committee**"), assuming that one will be formed. The purpose of the Professional Fund is to ensure that all estate professionals are treated identically.

44.     All amounts provided for in the Budget for the Professional Fund shall be in addition to any prepetition retainers paid by Car Toys to its professionals, and shall be deposited into an interest bearing trust account maintained by Cairncross & Hempelmann, the Company's general bankruptcy counsel, for pro rata payment of allowed fees and costs to the Company's and the Committee's professionals, including any amounts payable pursuant to any other order entered by this Court authorizing interim periodic payment of professional fees, subject to final allowance of such fees and costs. To the extent the Professional Fund ultimately exceeds all allowed professional fees and costs of the estate, the remaining balance shall remain subject to the first priority security interests of the Senior Secured Lender and returned to the Debtor for its benefit. Car Toys seeks to use Cash Collateral and proceeds of the DIP Loan to pay the following costs, fees and expenses (collectively, the "**Carve-Out**"): (a) the unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; and (b) Contributions to the Professional Fund to the extent authorized under the Budget in such amounts and at such times as described in the Budget.

## CAR TOYS' CONTINUED USE OF CASH MANAGEMENT SYSTEMS AND BANK ACCOUNTS

45.     Car Toys' regular business operations requires the collection, payment, and transfer of funds through numerous bank accounts. As of the Petition Date, Car Toys uses two software programs to track orders, generate invoices, and to facility the Company's efficient collection, transfer, and disbursal of funds generated through its operations and to record those collections, transfers, and disbursements as they are made.

DECLARATION OF PHILIP KAESTLE - 11

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

46.     The cash management systems used by Car Toys in the regular course of its business are Merchandise Management for Home Furnishings (a product of Blue Yonder) for the management of the Company's merchandise and inventory; and Shopify Pay for credit card processing (collectively, the "**Cash Management Systems**").

47.     These Cash Management Systems are a mainstay of Car Toys' ordinary, usual, and essential business practices. They provide numerous benefits, including the ability to quickly create status reports on the location and amount of funds, which allows management to track and control corporate funds, ensure cash availability and the prompt payment of corporate, employee, and vendor related expenses, and reduce administrative costs by facilitating the efficient movement of funds. Without the Cash Management Systems, Car Toys would be unable to continue its operations during this Chapter 11 proceeding.

48.     The Debtor's Cash Management Systems are comprised of 8 bank accounts. These bank accounts, collectively and with any other bank accounts the Debtor may open in the ordinary course of its business, are referred to herein as the "**Bank Accounts**"). The functions of these Bank Accounts are further described below:

| Account No. (last four digits) | Banking Institutions | Type of Account | Function |
|---|---|---|---|
| -9937 | Webster | Deposit | Concentration Account |
| -3058 | Webster | FSA | FSA Account |
| -0113 | Webster | Funding | Funding Account |
| -0120 | Webster | Checking | Payable Account |
| -5404 | Webster | Loan Balance Available | Loan Repayment |
| -0892 | Webster | Savings | MMA |
| -0400 | Bank of America | Deposit | Bank of America Deposit Account |
| -0196 | US Bank | Deposit | US Bank Deposit Account |

49.     Car Toys also routinely uses prepaid credit cards for certain minor expenses relating to its stores. Authorization for the continued use of such prepaid credit cards is essential to the ongoing operations of the Company's business.

DECLARATION OF PHILIP KAESTLE - 12

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

50.     The transition of Car Toys into this Chapter 11 proceeding will be smoother and more orderly, and with minimum disruption and harm to its operations, if the Company can continue using these Bank Accounts and Cash Management Systems following commencement of this Chapter 11 Case, provided that checks issued or dated prior to the Petition Date will not be honored absent an order of this Court. In order to maintain a distinction between checks that were issued before the Petition Date and those issued after, Car Toys will skip at least 100 sequential check numbers and will start a new sequence with the next appropriate check number that is a multiple of 100.

51.     Permitting Car Toys to maintain these Bank Accounts will also relieve the bankruptcy estate from the costs and delay associated with opening new accounts and obtaining new checks. Indeed, parties doing business with the Company will be aware of its Chapter 11 debtor-in-possession status through word of mouth, and all trade creditors will receive notice from the Court.

52.     Changing checks and other business forms would be unnecessarily burdensome to Car Toys' estate, as well as expensive and disruptive to the Company's business operations. By preserving business continuity and avoiding disruption and delay, all parties in interest, including the Company's employees, vendors, and customers, will be served, and will benefit Car Toys and its business operations considerably.

53.     If the balances in these Bank Accounts goes above $250,000, Car Toys will immediately move the funds to a collateralized DIP account and conduct its business from there.

54.     The Company started the process of opening a DIP bank account on August 1, 2025, at Bank of America. All account paperwork and KYC forms have been completed, and the Company expects the account to be open by August 31, 2025.

DECLARATION OF PHILIP KAESTLE - 13

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

## CAR TOYS' PAYMENT OF PRE-PETITION WAGES, BENEFITS AND OTHER EMPLOYEE-RELATED COSTS

55.     Car Toys employed approximately 498 employees (the "**Employees**") as of July 31, 2025. These employees perform corporate-level functions, including administration, supply chain logistics, sales, accounting, human resources, information technology, customer service, and other administrative functions. These Employees also perform day-to-day operations and tasks at Car Toys' various retail, distribution center, and upfitting annex locations. These Employees are essential to Car Toys' operations and business.

56.     Car Toys regularly incurs certain obligations relating to these Employees. These obligations include wages and related compensation, sales commission, workers' compensation premiums and claims, payroll processing fees, payroll taxes, withholdings, deductions, and costs associated with employee benefits programs and plans.

57.     Car Toys pays wages to its Employees on a bi-weekly basis. The most recent full pay period began on August 10, 2025, and will end on August 23, 2025. Payroll is next scheduled to be paid on August 29, 2025.

58.     Wages associated with this most recent pay period have not yet been paid, per standard practice. In addition, certain payroll taxes associated with this pre-petition portion of the payroll period have not yet been paid. I estimate that the amounts owing as of August 18, 2025, in connection with payroll for the period ending on August 23, 2025, and related taxes and other premiums, will total approximately $699,026.78. Attached as **Exhibit D** is a true and correct copy of a spreadsheet estimating what will be owing to each Employee in pre-petition wages to each Employee as of the date of this Chapter 11 filing.

59.     Car Toys also maintains employer-sponsored benefits plans for its Employees. The Company pays approximately $325,000 in costs associated with these plans each month.

DECLARATION OF PHILIP KAESTLE - 14

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Docusign Envelope ID: 070DE702-BC50-4EA9-9359-1F68EF814E47

60.     Car Toys' ordinary business operations also include providing its Employees other benefits, such as vacation pay and reimbursement of business expenses, including charges for company-authorized expenses.

61.     Car Toys' business operations also include withholdings, deductions, and taxes owing to certain governmental agencies and authorities on account of its employment of the Employees.

### PROVIDING ADEQUATE ASSURANCE TO UTILITIES

62.     In the ordinary course of its business, Car Toys pays for electricity, natural gas, water, waste, sewer, fire protection, telecommunications, internet, and other similar utility services from a number of utility companies or brokers.

63.     Maintaining Utility Services on an uninterrupted basis is essential to the Debtor's ongoing business operations and is crucial for the success of this Chapter 11 Case. Any interruption in the Utility Services, even briefly, would disrupt the Debtor's ability to continue their operations and to provide service to their customers. A disruption would also adversely affect customer goodwill and employee relations and decrease revenues and profits. Such a turn of events could devastate the Debtor's chapter 11 process and, ultimately, estate value and creditor recoveries. Therefore, it is critical that the Utility Services continue uninterrupted during this Chapter 11 Case.

64.     Attached as **Exhibit E** is a true and correct copy of a non-exclusive list of more than 150 utility providers that provide utility services to Car Toys' various locations. This list may not be exhaustive.

65.     In the event Car Toys identifies any additional Utility Providers not listed in **this** above exhibit at the time of filing this declaration, Car Toys intends to provide copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures, to such Utility Provider.

66.     Car Toys' aggregate monthly cost of the various Utility Services varies depending on the season, but is generally not more than $150,000 per month.

DECLARATION OF PHILIP KAESTLE - 15

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

67. Car Toys operates approximately 47 locations throughout the United States in Washington, Oregon, Colorado, and Texas. At least some of these locations are leased from landlords who are responsible for payment of some utilities. At these locations, these utility payments are satisfied by Car Toys' payment of rent. The estimated utility payments described herein do not include any utility service providers that are paid directly by any of these landlords. At other locations, Car Toys pays utilities by direct deposit to the applicable utility providers.

68. Car Toys intends to use its cash on hand to timely pay its post-petition obligations to the utility providers. The Company will have sufficient liquidity to satisfy the obligations owed, or to be owed, to the utility providers, by the Company obtaining, or having access to, debtor-in-possession financing, the approval of the use of cash collateral, and cash generated in the ordinary course of business. All these sources of cash combined should provide the Company with sufficient liquidity to satisfy its utility services obligations in a manner that conforms to the Company's historical, pre-petition practices.

69. Car Toys intends to provide additional assurance of payment ("**Adequate Assurance Deposit**") of these utilities by depositing $75,000 into a segregated escrow account that the Company will fund within 15 calendar days of the entry of the Court's Interim Order.

70. This amount represents approximately two weeks of the Company's average cost of utility services, calculated based on the Company's average utility expenses for the current fiscal year prior to the date of filing Chapter 11 (approximately seven months).

71. Car Toys expects that an Adequate Assurance Deposit and the Debtor's ability to pay future utility services in accordance with their prepetition practices should give Utility Providers sufficient adequate assurance in accordance with section 366 of the Bankruptcy Code.

72. As of the date of this declaration, Car Toys does not maintain any security deposits or letters of credit for the benefit of any Utility Provider.

DECLARATION OF PHILIP KAESTLE - 16

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700  fax 206 587 2308

## CAR TOYS' ISSUANCE OF WARN ACT NOTICE, WARN ACT PAYMENTS, AND THE TERMINATION OF EMPLOYEES

73.     As of July 31, 2025, Car Toys employed 218 employees (the "**Washington Employees**") in the State of Washington.

74.     The Washington Employees perform a variety of functions, including corporate-level functions, administration, supply-chain logistics, sales, accounting, human resources, information technology, and customer service. They also perform day-to-day operations and tasks at Car Toys' various retail and distribution center locations in Washington.

75.     Car Toys intends to close certain Washington stores and sell others as going concerns. The Company thus intends to terminate the Washington Employees at both the closed and sold stores. Prior to termination, in compliance with Washington law (the "**Washington WARN Act**"), the Company will pay the Washington Employees for the requisite 60 days. The Company will continue paying the Washington Employees' wages during this period, unless and until a Washington Employee receives another offer of employment from a Purchaser, which the Company in good faith believes is likely to occur. A true and correct copy of a spreadsheet estimating the payments Car Toys will make to these Washington Employees is attached hereto as **Exhibit F**.

76.     Additionally, pursuant to the Washington WARN Act, law Car Toys must provide written notice to both the Washington Employees and to Washington State's Employment Security Department. A true and correct copy of Car Toys' proposed Washington WARN Act notice is attached as **Exhibit G**.

77.     Given that failure to comply with the Washington WARN Act could open Car Toys up to substantial liability, class action lawsuits, and civil penalties, Car Toys seeks authorization to issue this proposed written Washington WARN Act notice in the form attached the day after the Petition Date.

DECLARATION OF PHILIP KAESTLE - 17

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

78.     Car Toys also intends to terminate all Employees of the Company consistent with a schedule of termination dates.

### CAR TOYS' ASSUMPTION AND REJECTION OF LEASES

79.     Car Toys has identified certain stores that are valuable as going concerns and which buyers are interested in purchasing. Attached as **Exhibit H** is a list of the leases associated with the Purchased Stores, which will be assumed pursuant to the PSAs, and the terms of assumption. I have reviewed this list and the applicable terms and find them to be reasonable arm's length transactions.

80.     Car Toys has also identified certain stores that are a drain on the Company's resources. The Company has been unable to find any potential purchasers interested in buying these stores (the "**Closed Stores**"), as they have operating losses on a 4-wall basis.

81.     As such, and to avoid continuing losses and the diminution of Car Toys' bankruptcy estate, the Company intends to reject the leases associated with these Closed Stores.

82.     The inventory currently located at the Closed Stores will be going to one or more of the Purchasers (as defined herein) pursuant to the PSAs. In conjunction with management, I will be determining whether inventory will be transferred to in order to maximize operations of the remaining stores for the benefit of the Purchasers. Closing these Closed Stores is justified because it will enable the sale of the Purchased Stores (defined herein) as going concerns and will add to the value of the estate. Furthermore, it will permit the inventory levels at the Purchased Stores to be maintained at a sufficient level such that the operations of those stores can be maintained through the proposed closing date of the PSAs. Moreover, the Company must maintain the inventory at these Purchased Stores – and so must pull inventory from the Closed Stores – pursuant to explicit terms in the PSAs.

DECLARATION OF PHILIP KAESTLE - 18

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Docusign Envelope ID: 070DE702-BC50-4EA9-9359-1F68EF814E47

**CAR TOYS' SEVERANCE, KEY EMPLOYEE INCENTIVE PLAN, AND KEY EMPLOYEE RETENTION PLAN OBLIGATIONS**

83. Car Toys owes various severance, key employee incentive plan ("**KEIP**"), and key employee retention plan ("**KERP**") obligations to certain eligible employees (the "**Severance Obligations**," "**KEIP Obligations**," and "**KERP Obligations**," respectively).

84. Car Toys' post-petition Severance Obligations owing to its employees (the "**Severance Eligible Employees**") are identified in a true and correct copy of a spreadsheet attached as **Exhibit F**. The Company's KEIP Obligations and KERP Obligations to these eligible, key employees under the KEIP and KERP are also outlined in **Exhibit F**.

85. The Severance Eligible Employees who are "insiders" as defined by 11 U.S.C. § 101(31)(B) and § 503(c)(2), because they are officers, directors, or persons in control of Car Toys, are as follows:

| Name of Employee | Title | Severance Pay |
|---|---|---|
| Geevy Thomas | CEO and President | $21,795 |
| Kimberly Nelson | EVP CFO | $64,377 |

86. The other Severance Eligible Employees listed in Exhibit F are rank and file, general and administrative ("**G&A**") employees. Historically and in the ordinary course of its business, Car Toys has maintained a severance policy (the "**Severance Policy**"), pursuant to which the Debtor pays severance to its G&A employees. The severance obligations the Debtor now seeks to pay to its non-insider, G&A employees are in accordance with this Severance Policy. And the Severance Obligations the Debtor seeks to pay to the "insider" employees identified in the are no greater than 10 times the amount of the mean severance pay given to these G&A employees, pursuant to 11 U.S. Code § 503(c)(2). The estimated Severance Obligations to both "insider" and non-insider Severance Eligible Employees total approximately $302,526.

87. Car Toys' remaining key employees ("**Key Employees**") subject to the KERP and the KEIP each have important and distinct skill sets and responsibilities. The Key Employees are

DECLARATION OF PHILIP KAESTLE - 19

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

1    critical to the success of this Chapter 11 case. Replacing these Key Employees would be difficult,

2    time-consuming, and expensive, if they could be replaced at all. Losing these Key Employees at

3    this early and critical stage of the Chapter 11 case would be highly disruptive to the process, which

4    would put the Company's bankruptcy estate and the creditors at risk.

5         88.    To minimize potential departures by the Key Employees during the Chapter 11

6    case, the Company has developed a KERP and a KEIP to motivate certain Key Employees. The

7    KERP and KEIP, if approved by this Court, will motivate the Key Employees eligible for the

8    KERP ("**KERP Eligible Employees**") and the Key Employees eligible for the KEIP ("**KEIP**

9    **Eligible Employees**") to remain employed by Car Toys and to maximize the value of the

10   Company's assets during this Chapter 11 case.

11        89.    Car Toys intends to pay nominal KERP Obligations to the KERP Eligible

12   Employees to retain them until the stores at which they are currently employed close. None of

13   these KERP Eligible Employees are "insiders" – as they are not officers, directors, or persons in

14   control of the Company. The KERP Eligible Employees identified by the Company as being

15   critical to the preservation of the Debtor's business are identified in Exhibit F. They are primarily

16   store managers, assistant store managers, installers, and other employees essential to the operation

17   of the Company's business. The purpose of the KERP Obligations is ensure that the store closures

18   are done efficiently and orderly – a task which cannot be completed without these KERP Eligible

19   Employees. I estimate the Company's total KERP Obligations to be $27,000.

20        90.    The Company has further determined that the implementation of a KEIP is

21   necessary and appropriate to ensure that KEIP Eligible Employees are incentivized to remain with

22   the Company through the Chapter 11 process. Some of these KEIP Eligible Employees are

23   "insiders" under 11 U.S.C. § 101(31)(B) and § 503(c)(2), as they are directors, officers, or persons

24   in control of the Debtor. Other KEIP Eligible Employees are non-insiders of the Debtor. The KEIP

25   Eligible Employees are identified in the attached Exhibit F.

26

DECLARATION OF PHILIP KAESTLE - 20

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

91.     These KEIP Obligations are directly tied to the successful closing of certain locations (those which are not being sold as going concerns to various Purchasers). It is essential that the KEIP Eligible Employees remain at these stores to ensure their timely and orderly closure. We have identified these KEIP Eligible Employees as being those best positioned to effectuate these store closures. The KEIP Obligations are estimated as totaling $81,500.

### AUTHORITY TO HONOR PRE-PETITION CUSTOMER GIFT CARDS AND GROUPON OBLIGATIONS

92.     Car Toys has historically offered its customers certain incentives, and other accommodations to attract and maintain positive customer relationships, the majority of which do not independently entail the expenditure of cash (the "**Customer Programs**"). The Customer Programs include (a) a gift card program, (b) Groupon program; (c) and in-store services requiring deposits. In the five (5) years leading up to the Petition Date, tens of thousands of individuals have purchased gift cards or Groupons from Car Toys.

93.     Continuing to honor these obligations for a limited time under certain Customer Programs in the ordinary course of business is necessary for Car Toys to retain its reputation for reliability. It is also necessary to comply with legal obligations, meet competitive market demands, and ensure customer satisfaction.

94.     Continuing the Customer Programs will allow Car Toys to maintain the goodwill of its current customers and its partners, preserve the value of its core business, and maximize the Company's revenue and profitability to the benefit of all the Company's stakeholders.

95.     Car Toys maintains its Gift Card Program, pursuant to which its customers can purchase pre-paid, non-expiring gift cards (the "**Gift Cards**") in exchange for a future sale. The Gift Cards once purchased, can then be redeemed in-store or online for merchandise at a later date. Car Toys sells Gift Cards to customers in its retail stores and online. I estimate that as of the Petition Date, based on documents dating back five years, approximately $1,145,625 in issued Gift Card balances remain outstanding. However, historical redemptions indicate that less than half of

DECLARATION OF PHILIP KAESTLE - 21

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Case 25-12288-TWD    Doc 22    Filed 08/19/25    Ent. 08/19/25 15:07:49    Pg. 21 of 25

this balance is likely to actually be redeemed, as it includes gift cards with minimal balances on them following other large purchases, as well as cards that have remained unredeemed for years. It is Car Toys' expectation that only $69,491.42 of the $270,837.32 in gift card balances issued in the last year of the remaining gift card balance has any likelihood of redemption, and its business records are consistent with that expectation.

96.     In connection with this Chapter 11 Case, Car Toys intends to immediately cease the issuance of new Gift Cards and to wind down its Gift Card Program, leaving the continuation of the same to the new buyers, if desired.

97.     As part of this wind down, for the first sixty (60) days from the date of entry of the Interim Order, the Company will continue to accept validly issued Gift Cards in its e-commerce business and in its stores in the ordinary course of business. After expiration of this 60-day period, all such validly issued gift cards, gift certificates, or equivalents will no longer be accepted by the Company and deemed to have no remaining value, subject to Purchasers' willingness to continue the programs.

98.     The Company may extend this deadline pursuant to purchase and sale agreements and the willingness of buyers to continue to honor those Gift Cards. It is contemplated that Purchasers will honor the same up to a negotiated holdback amount for ninety (90) days following the closing of sales. Car Toys will post conspicuous signs in its retail stores, including at cash registers and online explaining the modification to the Gift Card Program, which will remain posted throughout the first sixty (60) days of this Chapter 11 Case. Car Toys does not maintain records of the holders of Gift Cards and so cannot give direct notice to each such holder of a Gift Card.

99.     Notwithstanding and policy or state law to the contrary, the gift cards, gift certificates, or equivalents are not redeemable for cash at any time.

100.    Car Toys also sells products and services through Groupon.com ("**Groupon**"), an e-commerce marketplace connecting its subscribers with local merchants, such as Car Toys.

DECLARATION OF PHILIP KAESTLE - 22

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Through Groupon, customers purchase products and services at a reduced price, which service or product can later be redeemed at a Car Toys location. Generally, the promotional value of the Groupon purchase expires 180 days after purchase, though the amount paid never expires. Based on company records, I estimate that as of the Petition Date, approximately $1,285,546.44 in Groupon redemptions is outstanding. Car Toys estimates that no more than $100,000 in redemptions will occur within a 90-day period after stores are sold.

101.    Again, Car Toys estimates that only a fraction of the Groupon redemptions are likely to actually occur. Its business records confirm that redemption rates decline if they do not occur within a year, and there are many Groupon redemptions that have been pending for longer than that.

102.    In connection with this Chapter 11 case, Car Toys intends to immediately cease the issuance of new Groupon sales, and to wind down its Groupon Program, leaving the continuation of the same to the new buyers. As part of this wind down, for the first sixty (60) days from the date of entry of the Interim Order, the Company will continue to accept the validly issued Groupon redemptions at its stores in the ordinary course of business. After expiration of this 60-day period, all such validly issued Groupon redemptions will no longer be accepted by the Debtor and deemed to have no remaining value. Car Toys may extend this deadline pursuant to purchase and sale agreements and the willingness of buyers to continue to honor those redemptions. Again, it is contemplated that Purchasers will continue to honor Groupons up to a negotiated holdback amount for 90 days following the closing of sales.

103.    Notwithstanding and policy or state law to the contrary, the Groupons are not redeemable for cash at any time.

104.    As with the gift cards, Car Toys will post conspicuous signs in its retail stores, including at cash registers and online explaining the modification to the Groupon Program, which will remain posted throughout the first sixty (60) days of this Chapter 11 Case.

DECLARATION OF PHILIP KAESTLE - 23

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

105.     Car Toys also intends to continue to provide services to customers who have placed short-term deposits for work to be performed in the ordinary course of business. These deposits are already assumed and budgeted pursuant to Car Toys' Cash Collateral Motion.

106.     In the PSAs described above, there are holdbacks from the purchase price designed to permit the Purchasers to honor pre-petition Gift Cards and Groupons in amounts reflective of Car Toy's best estimates with respect to likely redemptions.

### AUTHORIZATION TO FUND CAR TOYS' PAYMENT OBLIGATION UNDER WARN ACT CLASS ACTION SETTLEMENT

107.     In the Wireless Advocates Chapter 7 Case, Plaintiffs Jason Karroll, Brandon Pham, Armani Little, Bradley Hibbs, Robert Pauley, Joel Gitter, Rusty Clark, Tracey Sava, and the Chapter 7 Trustee for Wireless Advocates filed an adversary proceeding, Case No. 23-10117-TWD (the "**WARN Act Adversary Proceeding**"), alleging various claims against both Wireless Advocates and Car Toys. In order for Wireless Advocates to settle the Plaintiffs' class action claims arising under the federal Worker Adjustment and Retraining Notification ("**WARN**") Act, in which Car Toys was also named, Car Toys agreed to contribute $125,000 to the total settlement amount. Car Toy's $125,000 contribution is due on or around October 6, 2025, subject to the Court's final approval, which should occur at or shortly after the August 22, 2025, hearing on final settlement approval.

108.     On the advice of Car Toys' employment counsel, Daniel L. Thieme, for the benefit of the Debtor's estate and the creditors, Car Toys seeks authority to pay this $125,000 settlement amount. Additional information regarding this settlement is included in the Debtor's Motion to Authorize Payment of WARN Act Settlement, the Declaration of Daniel L. Thieme (the "**Thieme Declaration**") filed therewith, and the Brettler Declaration.

### IMMEDIATE AND IRREPARABLE HARM & LIMITING NOTICE

109.     Car Toys will face immediate and irreparable harm if the First Day Motions are not heard on shortened time. For instance, without the immediate use of Cash Collateral, and the ability

DECLARATION OF PHILIP KAESTLE - 24

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Docusign Envelope ID: 070DE702-BC50-4EA9-9359-1F68EF814E47

1  to perform other actions authorized by this Court's orders on the First Day Motions, the

2  Company's will lack the ability to pay utilities, payroll to its employees, vendors, suppliers, payroll

3  taxes, and other expenses necessary for the continued operations of Car Toys' business. The

4  Company will further lack the ability to provide legally required notices to its employees.

5  110.  Additionally, notice should be limited in this case. Including gift card holders and

6  Groupon holders, the number of creditors of Car Toys' bankruptcy estate totals well over sixteen

7  thousand (16,000) individuals or entities. Giving notice to this number of creditors would be

8  unwieldy, extremely burdensome, and a drain on the Company's assets. The cost of copying and

9  mailing even a simple notice to all parties on the mailing matrix would be significant. Accordingly,

10  it is critical that the Company be permitted to limit notice to creditors.

11  111.  Car Toys also intends to seek the appointment of Stretto, Inc. ("**Stretto**") as claims

12  and noticing agent. Stretto will maintain a public-facing website, on which it will publish all docket

13  entries in this case. *See* https:// cases.stretto.com/CTI. Stretto has also established a toll-free

14  number, (833) 329-2728. Interested parties will have access to up-to-date materials, forms, and

15  basis information regarding this case on Stretto's website. Stretto will also include on its website

16  a request for special notice ("**Request for Special Notice**") form, which interested parties may

17  submit.

18  I declare under penalty of perjury under the laws of the state of Washington that the

19  foregoing declaration is true and correct.

20

21  EXECUTED this 19th day of August 2025 at Seattle, Washington.

22

23 
Philip Kaestle

24

25

26

DECLARATION OF PHILIP KAESTLE - 25

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308